## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**CYNTHIA DAVIS**                                              **CIVIL ACTION**

**VERSUS**                                                     **NO. 13-677-BAJ-RLB**

**SAFECO INSURANCE COMPANY**
**OF AMERICA**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have **14 days** after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY  NO  EXTENSION  OF  TIME  SHALL  BE  GRANTED  TO  FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on March 27, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CYNTHIA DAVIS                                    CIVIL ACTION

VERSUS                                           NO. 13-677-BAJ-RLB

SAFECO INSURANCE COMPANY
OF AMERICA

REPORT AND RECOMMENDATION

Before the Court is a referral from the district judge of defendant Safeco Insurance

Company of America's (Safeco) Motion to Compel Appraisal Pursuant to the Terms of

Plaintiff's Homeowner's Policy and to Stay the Case Pending the Conclusion of the Appraisal

Process. (Motion) (R. Doc. 7).  The Motion is opposed (R. Doc. 8) and Safeco filed a reply (R.

Doc. 11).  For the reasons set forth below, it is the recommendation of the undersigned that

Safeco's Motion to Compel Appraisal and Stay Litigation (R. Doc. 7) be **DENIED**.

I.      **BACKGROUND**

In this action, plaintiff Cynthia Davis alleges her insurer, Safeco, failed to timely initiate

loss adjustment and breached its duty of good faith and fair dealing in violation of Louisiana

Revised Statutes 22:1892 and 22:1973. (R. Doc. 1-1).  According to the petition, plaintiff owns

property located in Springfield, Louisiana, which is within Livingston Parish.[1]  The property was

insured by defendant Safeco.

Plaintiff alleges that her home sustained covered losses caused by Hurricane Isaac on

August 29, 2012. (R. Doc. 1-1 at ¶ IV).  A claim was submitted to Safeco on or about August 31,

2012 for such damage. (R. Doc. 11 at 10).  An adjuster was sent to plaintiff's home by Safeco on

---

[1] The allegations set forth in plaintiff's Petition can be found at Record Document No. 1-1.

1

September 6, 2012 and that adjuster estimated that the damage could be fully repaired for

$2,014.83. (R. Doc. 8-1 at 17).[2]  On or about September 17, 2012, Velocity Services Group, a

company plaintiff arranged to come to her home and estimate the cost of repairing the damage,

provided an estimate to Safeco of $24,911.67. (R. Doc. 8-1 at 17).  Safeco sent another adjuster,

Mr. Tommy Paul, to plaintiff's home for a "reinspection" that took place on September 26, 2012.

*Id.*  At that reinspection, the claim file contains documentation that Safeco was "unable to reach

agreement with [plaintiff's] contractor on scope or cost of damages." (R. Doc. 8-1 at 17).  Safeco

did provide a supplemental payment after determining a revised estimate of $3,674.99. (R. Doc.

8-1 at 17).[3]

On November 1, 2012, Jim Anthony, the "Claims Team Manager – Cat / Field

Operations" for the "Safeco National Catastrophe Team" sent an email to Velocity Services

Group and Mr. Paul. (R. Doc. 8-1 at 168).  Plaintiff was cc'd on the email.  Mr. Anthony stated

in the email that he has "finished reviewing this entire file" and "feel[s] that what we have

offered is more than fair." (R. Doc. 8-1 at 168).  He tells plaintiff that she can "feel free to utilize

the Appraisal option as written in the Policy." (R. Doc. 8-1 at 168).

The policy contains the following clause:

> 7. **Appraisal**. If you and we do not agree on the amount of the loss, including the
> amount of ***actual cash value*** or ***replacement cost***, then, on the written demand of
> either, each shall select a competent and disinterested appraiser and notify the
> other of the appraiser selected within 20 days of such demand. The appraisers
> shall first select a competent and disinterested umpire; and failing for 15 days to
> agree upon such umpire, then, on request of you or the company, such umpire
> shall be selected by a judge of a court of record in the state in which the property
> covered is located. The appraisers shall then resolve the issues surrounding the
> loss, appraise the loss, stating separately the ***actual cash value*** or ***replacement
> cost*** of each item, and, failing to agree, shall submit their differences, only, to the

---

[2] Applying the $1000 deductible, plaintiff was paid $1,014.83.

[3] This resulted in an additional payment of $1,660.16 after subtracting the deductible and the amount previously paid.

umpire. An award in writing, so itemized, of any two of these three, when filed
with the company shall determine the amount of loss.

Each party will:

a.      pay its own appraiser; and
b.      bear the other expenses of the appraisal and umpire equally.

(R. Doc. 8-1 at 305-306).

Despite this unequivocal conclusion that the parties were at an impasse, as well as

Safeco's acknowledgement that the appraisal process could be invoked based on that failure to

agree, Safeco did not invoke the appraisal process.

Safeco alleges that in a conversation on November 8, 2012, the plaintiff requested

additional time to review the estimates. (R. Doc. 11 at 11).  On January 15, 2013, Safeco alleges

that plaintiff was asked about her thoughts regarding the estimates that had been prepared as well

as the appraisal process.  Plaintiff stated that she had not given either much thought. (R. Doc. 11

at 11).

Over the next several months, there was very little contact between plaintiff and Safeco.

Internal documentation in the claim file, however, reflects consideration by Safeco as to whether

to demand appraisal throughout this time period. (R. Doc. 8-1 at 154) (January 23, 2013 diary

report noting that the "appraisal process" had previously been recommended and stating "[i]f no

response by next NRD I plan to demand appraisal"); (R. Doc. 8-1 at 152-153) (February 20,

2013 memorandum requesting guidance as to "whether to demand appraisal" based on

"significant differences" that parties have been "unable to resolve"); (R. Doc. 8-1 at 148) (March

20, 2013 diary report documenting need "to determine if damages can be resolved or if we need

to proceed with appraisal process"); (R. Doc. 8-1 at 146) (April 30, 2013 diary stating "I had

considered demanding appraisal" and think that the best approach is "to let her contact us to

discuss or demand appraisal if she disputes our assessment"); (R. Doc. 8-1 at 143) (July 9, 2013 entry stating "I don't know if this can be resolved without appraisal process").

The same documents, however, reflect requests by plaintiff to review the estimates and an inability to do so based on personal health concerns as well as health concerns regarding her mother. (R. Doc. 8-1 at 153) (insured has been unable to review estimates and discuss damages due to health concerns with her mother and then her own health issues); (R. Doc. 8-1 at 146) (April 30, 2013 diary stating "insured has advised of medical issues as reason for not getting back to me"); (R. Doc. 8-1 at 143) (July 9, 2013 entry noting that plaintiff has previously advised of health problems in her family and then with herself).

Direct contact was resumed between plaintiff and Safeco on July 9, 2013.  Safeco reopened the claim file based on this contact.  Plaintiff requested that Safeco speak with Randy Ellis as her contact. (R. Doc. 8-1 at 143).[4]  On July 24, 2013, Cheryl Steppig, an "Inside Property Loss Specialist II" with Safeco, sent a letter to plaintiff. (R. Doc. 8-3).  This letter informed plaintiff that Safeco has already issued payment based on their estimated damages and that they are "unable to reach an agreement" regarding the scope and cost of the necessary repairs "and therefore suggest the appraisal process to resolve." (R. Doc. 8-3 at 1).  The letter further advises plaintiff that Safeco will not cover any damages that are due to flood or surface water.

Despite this unequivocal conclusion that the parties were at an impasse, as well as Safeco's acknowledgement that the appraisal process could be invoked based on that failure to agree, Safeco did not invoke the appraisal process.

On or about August 29, 2013, plaintiff sued Safeco in the 21st Judicial District Court for the Parish of Livingston, alleging that Safeco "has failed to pay all amounts owed to plaintiff

---

[4] In an entry in the claim file dated July 25, 2013, there is documentation regarding a contact with "Randy" explaining that the "field reviewed and the next step is the appraisal process." (R. Doc. 8-1 at 99).

within thirty days of its receipt of satisfactory proof of loss, and its failure to pay is arbitrary, capricious and/or without probable cause." (R. Doc. 1-1 at ¶ XIII).  Safeco was served through the Louisiana Secretary of State on September 11, 2013. (R. Doc. 1 at 1).  The lawsuit was removed to federal court on October 11, 2013. (R. Doc. 1).  In the Notice of Removal, Safeco acknowledges that, based on a partial damage estimate to the dwelling as well as a replacement to the roof, plaintiff has provided estimates in excess of $37,000. (R. Doc. 1 at 3-4).

The parties participated in mediation on November 25, 2013 and were unable to reach a resolution. (R. Doc. 11 at 5).  In a letter dated November 26, 2013, Safeco invoked the appraisal provision in its insurance policy to set the amount of loss. (R. Doc. 7-2).  Plaintiff objected (R. Doc. 7-3) and Safeco filed the instant Motion seeking an order compelling plaintiff to participate in the appraisal process as agreed upon in plaintiff's policy with Safeco (R. Doc. 7).

Plaintiff filed a Memorandum in Opposition (Opposition) on January 7, 2014. (R. Doc. 8).  Plaintiff argues that Safeco has waived its right to invoke the appraisal clause based on its unreasonable delay before invoking the clause as well as its failure to select a competent appraiser that is registered with the Louisiana Department of Insurance. (R. Doc. 8 at 6-10).  In the alternative, plaintiff requests that any order from the court compelling the appraisal process should clarify and limit the scope of such process. (R. Doc. 8 at 10-12).

In a Reply Memorandum, Safeco asserts that any delays prior to invoking the appraisal process were at the request of plaintiff and that the competency of its appraiser is no longer an issue as it has selected a new appraiser that is registered. (R. Doc. 11 at 2-6).  Safeco further asserts that the scope of the appraisal process is clear and no clarifying order is required. (R. Doc. 11 at 6-8).

## II.   LAW AND ANALYSIS

### A.   Validity of the Appraisal Provision

Although not directly challenged by either party, the court first determines whether the appraisal provision at issue is valid and enforceable in the manner requested by Safeco.  Courts have consistently held that appraisal provisions in insurance policies are enforceable. *See, e.g.*, *Pa. Lumbermens Fire Ins. Co. of Phila. v. Barfield*, 138 F.2d 365, 366-67 (5th Cir.1943) (upholding appraisal provision in a fire insurance contract); *Fourchon Docks, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 86-2267, 1988 WL 32938, at *8 (E.D. La. Apr. 6, 1988) ("[S]tipulations in insurance policies providing for an appraisal in case there is a disagreement as to the amount of the loss are clearly valid in Louisiana.") (citing cases); *Hilltop Bowl, Inc. v. U.S. Fid. & Guar. Co.*, 259 F. Supp. 649, 650-51 (W.D. La. 1966) (finding appraisal provision valid where the policy did not contain a mandatory arbitration clause that could affect the jurisdiction of the court).

Therefore, the Court concludes that the appraisal provision agreed upon by the parties is valid.

### B.   Waiver of the right to invoke the appraisal process

For the appraisal provision in this case to be applicable, it must be a circumstance where the two parties "do not agree on the amount of the loss." (R. Doc. 8-1 at 305).  Once the parties have reached such a disagreement, the Court must determine whether the appraisal demand was timely made.  In determining whether the invocation of the appraisal provision was timely, the Court first looks to whether the contract at issue specifies the duration for invoking the appraisal.  If the contract sets forth specific timing to invoke appraisal then the parties will be held to those terms. *See Maison Orleans I v. Liberty Mut. Fire Ins. Co.*, No. 06-2856, 2006 WL 2460755, at

6

*4 (E.D. La. Aug. 22, 2006) (plaintiff not required to submit to the appraisal procedure where appraisal demand was not made within sixty days after receipt of proof of loss despite unambiguous requirement in the contract).

In this case, there is no such explicit time period within which to invoke the appraisal process.  In this circumstance, courts addressing this issue have held that appraisal must be invoked within a reasonable time after a dispute as to the amount of loss arises. *Terra Indus., Inc. v. Commonwealth Ins. Co. of Am.*, 981 F. Supp. 581, 598-600 (N.D. Iowa 1997) (finding appraisal must be invoked within a reasonable time after an impasse arises as to the value of the loss); *Kester v. State Farm Fire & Cas. Co.*, 726 F. Supp. 1015, 1019 (E.D. Pa. 1989) ("[T]he timeliness of a demand for an appraisal in each case depends upon the circumstances as they existed at the time the demand was made.") (alteration in original) (quotation omitted).

There is no dispute that the appraisal demand was made by Safeco on November 26, 2013. (R. Doc. 8 at 6, R. Doc. 11 at 14).  Therefore, the Court must determine when the parties can be said to have not agreed on the amount of loss such that the right to demand appraisal was applicable, and whether Safeco's invocation of that right on November 26, 2013 was not within a reasonable amount of time, therefore waiving that right.

Plaintiff urges the Court to find that the parties were at a disagreement sufficient to demand appraisal in late October of 2012. (R. Doc. 8 at 7).  The demand, made over a year later, was therefore untimely. (R. Doc. 8 at 8).  This position is supported by Tommy Paul's approval for an additional payment of $1,660.16 (based on his damage estimate of $3,674.99) in October, which was significantly less than the amounts provided to Safeco by plaintiff.  Mr. Paul's acknowledgement of the nature of the disagreement can be found in a notation dated October 31, 2012, stating that the claim should be submitted for appraisal. (R. Doc. 8-1 at 17-18).  The

November 1, 2012, email from Jim Anthony declaring that Safeco's offer is "more than fair" and telling plaintiff that she can "feel free to utilize the Appraisal option as written in the Policy" further supports that determination (R. Doc. 8-1 at 168).[5]

By the end of October of 2012, Safeco had received satisfactory proof of loss, the parties disagreed about the extent of that loss, and that disagreement had been directly communicated between them.  At this point in time, it could be said that Safeco "had sufficient information to act on the claim, either by compensating plaintiff[] under the policy or disputing the claim via the appraisal process." *Nguyen v. St. Paul Travelers Ins. Co.*, No. 06-4130, 2007 WL 1672504, at *4 (E.D. La. June 6, 2007) (request for appraisal made four months after receiving sufficient proof of loss was untimely and plaintiffs were not required to submit to appraisal procedure).

The parties, however, resumed contact only one week later and plaintiff requested additional time to review the estimates and expressed optimism that the claim could be resolved. (R. Doc. 11 at 11).  In a later conversation, plaintiff indicated that she had not yet had time to review the estimates due to certain health issues.  In response, Safeco agreed to hold the file open. (R. Doc. 11 at 11).  Safeco argues that it was reasonable to wait to demand appraisal and that the length of delay is attributable to the requests from plaintiff based on her personal health issues. (R. Doc. 11 at 3-5).

Courts have noted the potential for problems should the case law be seen to punish attempts at resolution or encourage litigation.  The *Terra* court commented on this concern in considering whether the filing of a lawsuit itself should be held to preempt another party's demand for an appraisal of the loss.  *See Terra*, 981 F. Supp. at 600.  "Such a suit would be the insured's unilateral declaration that impasse had been reached and might be the insurer's first

---

[5] Of course, if Safeco felt that the next step was appraisal, then they could have made such a demand at that point as well.  It is equally the case that, despite Safeco offering only two options – accept the money already provided or demand appraisal – plaintiff could have chosen litigation as the (unmentioned) third option.

notice that negotiations had broken down." *Id.* If this were the rule, then it would create an incentive for the insurer to strike first – declare an impasse and demand appraisal – in order to prevent the insured from filing suit first. *Id.* These same concerns could apply should the parties, while jointly and in good faith attempting to resolve differences in their damage estimates, be concerned that the court will later find that the time seeking that resolution would be held against them. *Id.*

This is not a case, however, that gives rise to such a concern. Regardless of the status in late 2012, there is no question that as of July of 2013, Safeco was aware that the parties were at an impasse and they had received satisfactory proof of loss. Safeco's July 24, 2013 letter to the Plaintiff specifically says "we are unable to reach an agreement." (R. Doc. 8-3). Safeco, however, did not demand appraisal until over four months later. Despite Safeco's argument to the contrary, no delay after July of 2013 was "the direct result of Plaintiff's conduct throughout the claims process." (R. Doc. 11 at 6). Even if the court were to use a starting point of mid-July, 2013,[6] Safeco's delay was unreasonable.

In determining what constitutes a reasonable time period, courts have considered the Louisiana Supreme Court's holding in *W.P. Sevier v. United States Fid. & Guar. Co.*, 497 So.2d 1380 (La. 1986). In *Sevier*, the court held that an insurer's failure to demand appraisal within 60 days of receipt of satisfactory proof of loss rendered the demand untimely and thus the plaintiff did not have to submit to the appraisal process. *Id.* at 1384. This 60 day time period, which was the time within which payment must be made under the policy, is reasonable whether applying the holding in *Sevier* directly or by analogy. *See Nguyen,* 2007 WL 1672504, at *3 (request made four months after receiving sufficient proof of loss was untimely); *See also Triple K, Inc. v.*

---

[6] July 17, 2013 was the date Safeco received additional information regarding the roof replacement (R. Doc. 8-1 at 18) and July 24, 2013, was the date of Safeco's letter stating that "we are unable to reach an agreement and therefore suggest the appraisal process to resolve." (R. Doc. 8-1 at 101).

*Century Sur. Co.*, No. 10-1236, 2010 WL 3418237, at *3 (E.D. La. Aug. 23, 2010) (applying *Sevier* and utilizing the 30 day "Loss Payment" provision applicable under the policy. Because the appraisal demand was made four months after proof of loss, it was untimely and unenforceable). The same 30 day period is set forth in the "Loss Payment" provision in the instant case. (R. Doc. 7-4 at 28).[7]

Subsequent events further support the conclusion that Safeco was unreasonable in its delay. On August 29, 2013, Safeco was sued by the plaintiff.[8] After being sued, rather than demand appraisal at that time, Safeco instead removed this action to federal court, specifically alleging that the amount in controversy exceeds $75,000 exclusive of interest and costs. (R. Doc. 1 at 1). In support of removal, Safeco noted the disagreement of the parties, including the roofing estimate received in July. (R. Doc. 1 at ¶ 16). Still, no demand was made.

In late November of 2013, plaintiff agreed to participate in mediation. On November 25, 2013, the mediation was unsuccessful. Safeco argues that based on a "new" estimate received at the mediation, it was only then that "Safeco became aware of the extent and nature of this dispute." (R. Doc. 11 at 5). This argument is not supported by the record. Indeed, since Jim Anthony's email on November 1, 2012, Safeco consistently took the position that it had paid all it was willing to pay. The Notice of Removal, filed six weeks before the mediation, alleges that the amount in controversy is over $75,000, with partial estimates submitted by Plaintiff of over

---

[7] Safeco does not argue that they did not receive sufficient proof of loss in the form of the estimates received from plaintiff or those on her behalf. Furthermore, in Louisiana, proof of loss is not required to be in any formal style. *See Maison Orleans I*, 2006 WL 2460755, at *3 (citing cases). "As long as the insurer receives sufficient information to act on the claim, the manner in which it obtains the information is immaterial." *Sevier*, 497 So. 2d at 1384 (citation omitted).

[8] The court notes that this is not a case where the filing of the lawsuit was Safeco's first opportunity to learn that there was a disagreement about the amount of loss. *See Newman v. Lexington Ins. Co.*, No. 06-4668, 2007 WL 1063578, at *4 (E.D. La. April 4, 2007) (noting that insurer was unaware of any disagreement prior to being served with the complaint and holding that appraisal demand after two months was reasonable).

$37,000.  Therefore, Safeco's own filings with the Court acknowledge a difference of over $33,000 based on partial damage estimates alone as of July 2013.

At the time of the mediation, plaintiff had (1) received notice from Safeco on numerous occasions that they disagree with plaintiff's loss estimates, (2) filed suit in state court against Safeco, and (3) had her case removed by Safeco to another forum.  To find that plaintiff's voluntary participation in a mediation or settlement conference, months after providing proof of loss and filing suit, restarts the time to demand appraisal, is neither consistent with the terms of the policy nor the case law analyzing such provisions.  The court will not make such a finding here.

For the foregoing reasons and based on the specific facts of this case, the appraisal demand by the defendant was untimely and therefore unenforceable.  The court need not consider plaintiff's alternative argument that Safeco's initial failure to select a competent appraiser thereby renders the appraisal process unavailable.

III.   **RECOMMENDATION**

It is the recommendation of the undersigned that the defendant's Motion to Compel Appraisal Pursuant to the Terms of Plaintiff's Homeowner's Policy and to Stay the Case Pending the Conclusion of the Appraisal Process (R. Doc. 7) be **DENIED**.

Signed in Baton Rouge, Louisiana, on March 27, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**